## Reed, Appellant, *v.* Klaus.

[Marked to be reported.]

*Vendor and vendee—Evidence of title—Married women.*

In an action by a married woman in the name of her husband and herself, but in her own right, to recover a balance of unpaid purchase money of real estate, it is error to permit defendant to introduce evidence to the effect that the title to the property was really in the husband and not in the wife, and that at time of purchase defendant had no notice of any claim or interest therein of the wife, and that the husband was indebted to him in an amount in excess of the balance claimed.

*Conveyance in fraud of husband's creditors—Evidence.*

As there was no contest between the vendor and her husband's creditors, evidence as to the solvency of the husband, etc., was inadmissible.

Argued Oct. 25, 1892. Appeal, No. 51, Oct. T., 1891, by plaintiff, Eliza J. Reed, in her own right, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1889, No. 465, on verdict for defendant, Albert L. Klaus. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit for balance of purchase money of realty.

At the trial, before MAGEE, J., the evidence was to the following effect: In 1872, W. A. Reed, appellant's husband, bought the property in dispute, paying $2,800 and giving a mortgage of $2,800. This mortgage was assigned in 1873 and 1877 to different parties, and finally in 1884 to defendant's brother-in-law, who foreclosed, bought in the property at $500 and conveyed it to defendant without consideration. Mrs.

Reed claimed that when the mortgage was assigned it was paid for out of her separate estate and held in trust for her, and that the foreclosure, sale and subsequent conveyance to defendant was in pursuance of an agreement between herself and defendant by which he was to pay her $5,000 when the title was made to him. Defendant claimed that the property belonged to plaintiff's husband, that the $5,000 was to be paid to him and that it had been more than paid by counterclaims by defendant, incurred by plaintiff's husband between 1884 and 1887.

Under objection and exception, defendant was allowed to introduce evidence of the failure in 1875 of the Allegheny Trust Co., of which A. W. Reed was president [10]; and evidence to show that the property in question was not bought by plaintiff's separate estate. [11–18]

The court charged the jury in part as follows:

["Much testimony was given upon the transactions of a business character between Mr. Reed and his son-in-law, Mr. Klaus, the defendant, as well as upon the question of Mr. Reed's solvency, and Mrs. Reed's separate, or lack of separate estate. These matters do not bear directly on the question at issue, but were admitted in proof as furnishing some evidence tending to show the real contract or agreement alleged to have been made, by an understanding of the relations and the dealings of the respective parties involved in the controversy.] [4]

" This action is not intended to settle the affairs of Mr. Reed with Mr. Klaus, because Mr. Reed says that he has no rights in the purchase money, and that it belongs to his wife. This action, however, would preclude him in case of a recovery by the wife in this action from setting up any claim in the future to the fund in controversy. You will take, therefore, these matters I have just mentioned into consideration, merely as affecting the credibility of the witnesses and the reasonableness of the contention of the parties. This controversy is not one in which the creditors of the husband are questioning the title of the wife to hold property, transferred to the wife by the husband, or one in which the question of a separate estate of the wife is the issue directly involved, and where the rule of law requires the wife to maintain her rights by clear proof of her ownership as a separate estate, or such as is derived from her separate estate. [It is a controversy between debtor and

creditor; it is the purchase of a piece of real estate for a fixed price, and when the purchaser has acquired title a dispute has arisen as to whether the husband or the wife is the vendor, and the materiality of that question grows out of the fact that the credits claimed by the defendant are principally against the husband and only affect his rights to the fund. It is to the interest of Mrs. Reed and her husband that the claim should be the wife's, because the evidence shows that if it belongs to the husband it is involved in the settlement of partnership obligations, and losses or liabilities alleged to exist between Mr. Reed and Mr. Klaus; and it is equally the interest of Mr. Klaus that he should have the purchase money for the house applied to his claims against Mr. Reed.] [5] These suggestions are only by way of consideration, as a means of determining in what respect interest may affect their testimony.

[ " If the agreement was made with Mrs. Reed by Mr. Klaus I have said that that would give her a claim to the fund, but it does not follow that payments made to Mr. Reed are not to be allowed as credits in this transaction. If it be found from the evidence, by act, or by express authority, of the wife, that the husband was the agent of the wife in what was done with the claim here—and that is where I say there is propriety in the admission of these items of claim that have been offered in evidence, because if the property was sold, as claimed by Mrs. Reed, by her directly, and her husband was her agent and acted for her and disposed of the property, that agency would make these payments a defence to her, but you ought to find that the agency clearly existed, either expressly authorized, or shown by such acts as impose upon her the liabilities of an agency, and authorized the defendant to act upon that agency.] [6] [Or if it be found that the agreement was not made with Mrs. Reed, but you find that the money belonged to her, Mr. Klaus would still be entitled to set off, in an action by her, any defences he might have to her husband arising before notice had of her claim to the fund. If the contract was made with the husband, and the wife had no legal or equitable estate in the premises or fund in dispute, and that the proceedings adopted were merely for the purpose of enabling the husband to secure control of his own property, the wife would have no claim to the money."] [7]

Defendant's points were, among others, the following :

" 2. If Klaus, the defendant, arranged to buy this property from Mr. Reed, supposing it to belong to him and having no notice of any claim or interest therein in Mrs. Reed, then Mrs. Reed cannot recover in this action." Affirmed. [1]

" 3. The uncontradicted evidence is that Mr. Reed purchased the property in question from Mr. Heckman, paying therefor in cash $2,800 of his own money, and giving his bond and mortgage for the balance, $2,800.  That said mortgage was paid as the installments came due, that neither the bond nor mortgage ever stood in the name of Mrs. Reed ; the presumption therefore is that the record disclosed the truth, and Klaus had a right to rely upon such presumption, and to deal with Reed as the owner of the property, and as Mrs. Reed seeks in this action to establish a state of facts, different from those disclosed by the record, she must show by clear and satisfactory evidence that she was the bona fide beneficial owner of the mortgage in question, and that Klaus had knowledge or notice of such ownership on her part when he bought the property in question. *Answer:* This point is affirmed, that is to say, that if Mrs. Reed has based her right to this money as her separate estate, and adverse to the rights of her husband and his creditors, she ought, in order to support the existence of her alleged contract with the defendant, to show that she was the bona fide beneficial owner, and that Klaus ought to have knowledge or notice of such ownership on her part." [2]

" 4. If the jury find that Reed was insolvent from the summer of 1875, then the fact that the mortgage was not assigned to her when finally paid off, but was carried in the name of other parties, raised a suspicion as to the good faith of the transaction on the part of Mr. and Mrs. Reed, and the burden is upon Mrs. Reed to remove that suspicion by clear evidence, and if she has not done so then she cannot recover." Affirmed. [3]

Verdict and judgment for defendant.  Plaintiff appealed.

*Errors assigned* were, (1–7) instructions, quoting points, answers and portions of charge as above ; (8, 9) answers to 3d and 4th points, quoting answers but not points ; (10–18) rulings on evidence, quoting bills of exception and evidence ; and (19) that the charge taken as a whole did not adequately present appellant's case, and misled the jury.

*N. H. Larzelere,* with him *C. C. Dickey* and *Whitesell & Sons,* for appellant.—Although a contract for the sale of goods may be fraudulent and void as to creditors, yet it will be binding as between the parties to it, and in any controversy on that subject between them, it is the duty of the court to instruct the jury to enforce the contract as made : Telford v. Adams, 6 Watts, 429 ; Boyle v. Rankin, 22 Pa. 168 ; Phipps v. Boyd, 54 Pa. 342.

He who will take a benefit cannot dispute the title : Smith v. Loafman, 145 Pa. 628 ; nor can the vendee set up want of title in the vendor as a defence to an action for the purchase money : Barnes v. Transue, 26 Pitts. L. J. 100 ; Roberts' Ap., 92 Pa. 407 ; Roland v. Tiernan, 8 W. & S. 193 ; Preston v. Elliott, 9 Pitts. L. J. 81 ; Hersey v. Turbett, 27 Pa. 418 ; Bradford v. Potts, 9 Pa. 37.

As between the wife and any others than the husband's creditors, she is only bound to establish her title by the ordinary degree of proof : Sawtelle's Ap., 84 Pa. 310 ; John's Ap., 102 Pa. 59 ; Jones v. Bland, 112 Pa. 176 ; Endlich, Married Women, 209 ; Earnest's Ap., 106 Pa. 310.

The case was not adequately presented to the jury and was misleading and confusing in character. This was error : Rice v. Olin, 79 Pa. 391 ; Bisbing v. Bank, 93 Pa. 79 ; Norton v. Lehn, 13 W. N. 559 ; Oram v. Rothermel, 98 Pa. 300 ; Bughman v. Byers, 12 Atl. R. 357.

*W. B. Rodgers, E. Y. Breck* with him, for appellee.—Defendant's theory was embraced in his second, third and fourth points, which were based on undisputed facts ; the real estate was Reed's undoubtedly, the installments of the mortgage were paid as they came due, and the mortgage was never assigned of record or in any other manner to Mrs. Reed, and if, under those facts, Klaus had no notice of any claim on the part of Mrs. Reed, he had a right to rely upon the presumptions arising from the state of record, and to buy the property from Reed, by a title to be made by Reed on this mortgage, and the facts of Reed's insolvency and that the mortgage was carried for ten or twelve years in the name of other parties, without any good reason, raised a suspicion as to the good faith of her claim which she must remove by clear evidence.

It is submitted that no honest transaction could be harmed by the affirmance of these points, and that a person dealing with Reed, without notice of Mrs. Reed's secret claims, had a right to the protection of the law as stated.

OPINION BY MR. CHIEF JUSTICE PAXSON, January 3, 1893:

This was a suit in the court below by the vendor of real estate against the vendee to recover the unpaid purchase money. The plaintiff was a married woman, and the suit was brought in the name of her husband and herself, but in her right. It was tried below upon an erroneous theory, involving a large amount of testimony, and consuming a great deal of time to little purpose. The principal defence was that the property did not belong to Mrs. Reed, but to her husband, and that Mrs. Reed's claim upon it was in violation of the rights of her husband's creditors. This resulted in the examination of many matters that had no relevancy to the issue.

The first specification alleges that the court below erred in affirming the defendant's second point. The point is as follows: " If Klaus, the defendant, arranged to buy this property from Mr. Reed, supposing it to belong to him, and having no notice of any claim or interest therein in Mrs. Reed, then Mrs. Reed cannot recover in this action."

The error in affirming this point was manifest. It is difficult to see of what possible interest it was to the defendant to whom the money should go. In any event, he was bound to pay the purchase money due to some one, and as both Mr. and Mrs. Reed testified that the property belonged to the latter, payment to her would protect him in any event. It matters not that the defendant supposed the property to have belonged to Mr. Reed. If, in point of fact, it belonged to his wife, the defendant would be bound to pay the purchase money to her when that fact was disclosed. He would only be protected so far as he had paid it to Mr. Reed without notice of the wife's claim ; but the point goes further than this, and rules that if the purchase money was unpaid, the fact that Mr. Reed did not disclose the fact of his wife's interest to the defendant would have entitled Mr. Reed to the purchase money, even against the claim of his wife, the real owner.

It was also error to affirm the defendant's second point.  See

second specification.   The effect of this was to rule that if the defendant had no knowledge or notice that Mrs. Reed was the owner when he bought the property in question, she would not be entitled to recover.

The same error is to be found in that portion of the charge of the learned judge contained in the eighth specification.   He held that Mrs. Reed must not only show that she was the bona-fide beneficial owner, but that the defendant ought to have had knowledge or notice of such ownership.   This was error.   It does not matter whether the defendant had such knowledge or not, so far as the balance of the unpaid purchase money is concerned.   The bringing of this suit was notice.   As before observed, if he has paid any portion of it to the husband under the belief that he was the owner, and without notice of the wife's claim, he would be protected to that extent, but no further.

The ninth specification is not assigned according to rule, and will not be considered.

The tenth specification is sustained.   We are unable to understand what the suspension of the Allegheny Trust Company in 1875 had to do with the issue before the court.   The inquiry was wholly irrelevant, and the testimony should have been excluded.   For a similar reason the eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth and eighteenth specifications are sustained.   If the case at bar had been a contest between appellant and her husband's creditors there would have been more reason for the admission of this testimony.   The issue presented, as before observed, was one between vendor and vendee in an action for purchase money.

We also sustain the nineteenth specification.   The case was tried upon an erroneous theory, and we think that the charge taken as a whole was calculated to mislead the jury.

The judgment is reversed, and a venire facias de novo awarded.